UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **CRYSTAL BARGE,** )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>**JENNIFER MILLER,** )<br>)<br>Respondent. ) | Case No. 4:08CV741 RWS/MLM |

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Before the court is the Petition Under 28 U.S.C. § 2254 by a Person in State Custody filed by Petitioner Crystal Barge ("Petitioner"). Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 8. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 6.

### I.
### BACKGROUND

On June 1, 2000, Petitioner was charged by Indictment as follows: Count I, Crystal Barge ("Petitioner"), Charaty White, and Sherline Franklin committed the class A felony of murder in the first degree in that on May 3, 2000, in the City of St. Louis, after deliberation, they knowingly caused the death of Danielle Montgomery by stabbing her, and Count II, Petitioner, Charaty White, and Sherline Franklin committed the felony of armed criminal action in that they committed the felony of murder in the first degree as charged in Count I, by, with, and through the use, assistance and aid of a dangerous instrument. Resp. Ex. B at 11-12.

On March 27, 2001, a guilty plea hearing was held before the State trial court. At the hearing the prosecutor stated that if Petitioner's case went to trial the State would prove that on May 3, 2000,

in the City of St. Louis, at the request of Charles Liston, Petitioner, Charaty White, and Sherlene Franklin invited Danielle Montgomery to 4938 Adline and together the three women, at Liston's request, killed Montgomery by means of a dangerous instrument. Resp. Ex. B at 18. Petitioner testified under oath that she agreed with the prosecutor's statement of the facts. Resp. Ex. B at 19.

Also, at the hearing on March 27, 2001, the State announced to the court that: "Pursuant to plea negotiations and contingent upon a successful plea and cooperation with the State, the State is now filing a Substitute Information in Lieu of Indictment charging the defendant with murder in the second degree and armed criminal action, where heretofore she had been charged with murder in the first degree." Resp. Ex. B at 2. Petitioner's counsel represented to the court that Petitioner had "authorized [him] to enter a plea of guilty to [] murder in the second degree. ... They're also requiring that she participate in *any* judicial proceedings involving this case or *any* other co-defendants." Resp. Ex. B at 2-3 (emphasis added). The prosecutor further stated at the plea hearing in March 2001 that:

> In exchange for her testimony in any judicial proceedings regarding the incident as described before regarding the murder of Danielle Montgomery, [] the defendant will testify truthfully in said judicial proceedings; and in return, the State has not only amended the charge to murder in the second degree and made - - and is making the following recommendation, and that is, life in the Missouri Department of Corrections on Count I followed by a consecutive sentence for Count II of 15 years.

Resp. Ex. B at 21.

Following this statement by the prosecutor, the trial court asked Petitioner if she understood the State's recommendation and she said that she did. Resp. Ex. B at 21. The court accepted Petitioner's guilty plea and set sentencing for a later date.

On about May 13, 2004, the State filed a Motion to Set Aside Plea and Substitute Information, which Motion stated as follows, in relevant part:

> [T]he State of Missouri, ... requests this court to set aside the plea of guilty entered by defendant Crystal Barge on March 27, 2001 ... . The Defendant plead guilty pursuit to a plea agreement and was not to be sentenced until after she finished

2

> her cooperation with the State of Missouri. She has not been sentenced and is pending sentencing before this court. The State requests leave to withdraw the substitute information in lieu of indictment and the plea of guilty pursuit thereto as they were contingent upon the defendant's cooperation in matters related to the investigation of Danielle Montgomery. ... During the trial of one of her co-defendants, Char[a]ty White, the defendant refused to cooperate or testify.
>
> Wherefore, the State respectfully requests that this court withdraw the guilty plea and permit the State to proceed on the original indictment.

Resp. Ex. B at 10.

After conducting a hearing on the State's Motion, the State circuit court found, on June 24, 2004, that Petitioner had breached the "plea agreement as reflected by the record." The State circuit court further set aside Petitioner's plea and the plea agreement and reinstated the "original indictment charging murder in the first degree and armed criminal action." Resp. Ex. B at 43.

Petitioner was found guilty, by a jury, of murder in the first degree and armed criminal action. Resp. Ex. B at 82-83. Petitioner was sentenced to life without parole for murder in the first degree and to four years for armed criminal action which sentences are to be served consecutive to one another. Resp. Ex. B at 88.

Petitioner filed a direct appeal. Resp. Ex. C. By decision, dated April 17, 2007, the Missouri appellate court affirmed the judgment against Petitioner. Resp. Ex. E. The record before this court does not reflect that Petitioner filed a post-conviction relief motion.

On February 22, 2008, Petitioner filed her § 2254 Petition in which she alleges that her constitutional rights were violated because, pursuant to the State's Motion, the State court set aside her plea agreement and reinstated the original Indictment charging her with murder in the first degree and armed criminal action in regard to the murder in the first degree. Doc. 1.

## II.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). See also Coleman, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1994).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the

4

federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.

In Petitioner's case she presented the issue which she raises in her § 2254 Petition to the Missouri appellate court. As such the court finds that Petitioner has not procedurally defaulted this issue and that she has exhausted her State remedies. Additionally, the court finds that her § 2254 Petition is timely.

### III.
### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent he thinks the state courts acted contrary to or applied unreasonably. Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or

involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland

v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411).  See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).  It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001).  Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11).  The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

7

proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1).").

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 644 (2004).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. Brown v. Luebbers, 371 F.3d 458 (8th Cir. 2004). The court held in Brown that:

8

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in Brown that:

> [It] is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.

Id.

## IV.
## DISCUSSION

Petitioner alleges that her constitutional rights were violated because, pursuant to the State's Motion, the State court set aside her plea agreement and reinstated the original Indictment charging

her with murder in the first degree and armed criminal action in regard to the murder in the first degree.

Upon addressing this issue the Missouri appellate court held as follows:

> Barge argues that the trial court abused its discretion in granting the State's motion to set aside the parties plea agreement after Barge refused to testify against one of her co-defendants, Charaty White, which Barge claims added to the terms of their original agreement. We disagree with Barge.
>
> We note initially that Missouri law provides that both the State and a defendant are bound by a plea agreement. State v. White, 838 S.W.2d 140, 142 (Mo. App. W.D. 1992). However, if one of the parties breaches a plea agreement, the parties are returned to their "pre-bargain status." Id. Upon review of a trial court's decision to grant a motion to dismiss for breach of a plea agreement, we look for an abuse of discretion. Proctor v. State, 809 S.W.2d 32, 35-36 (Mo. App. W.D. 1991).
>
> In this case, the record shows that Barge violated the clear and unambiguous terms of the parties' plea agreement. Specifically, Barge's attorney stated in open court and on the record that "Ms. Barge has authorized me to enter a plea of guilty to in fact murder in the second degree, Count II, armed criminal action ... . They're also requiring that she participate in *any* judicial proceedings involving this case or *any* other co-defendants" (emphasis added). In return, the State agreed to reduce the First Degree Murder charge to Second Degree Murder and make a specific sentence recommendation. In addition, the prosecutor told the court that the State would reduce the charges "in exchange for her testimony in *any* judicial proceedings regarding the incident as described before regarding the murder of Danielle Montgomery, [and] that the defendant [Barge] will truthfully testify in said judicial proceedings. ..." (emphasis added).
>
> In arguing that the State has attempted to "add[] obligations" to her plea agreement, Barge primarily relies on a "proffer letter," dated 6 September 2000, in which the Circuit Attorney's office sought Barge's cooperation in its case against Charles Liston. Although it is true that the letter in question only referred to the case against Liston, the letter specifically stated that it was *not* a binding plea agreement. Rather, the letter explicitly stated that it was merely "a commitment on the part of the State acting in good faith to take the nature and extent of your cooperation into account in deciding what resolution may be made with regard to the charges pending against you." The letter further states that Barge is "not entitled at this juncture to any specific consideration regarding the charges against ... [her] just because .. [she] will have given to the prosecution such a statement." In other words, this document simply spells out the terms of an agreement whereby Barge would make a complete and truthful statement regarding the events surrounding the death of Danielle Montgomery, which the State would then evaluate in determining whether to offer her

> a subsequent plea agreement. Thus, in exchange for providing a statement, the State merely promised to consider making a plea agreement in the future - nothing more.
>
> First, it is worth noting the dates that these events took place. The "proffer letter" from the Circuit Attorney's office, containing Barge's signature, is dated 6 September 2000. However, the hearing at which the terms of the plea agreement were discussed was held on 27 March 2001. Thus, based upon the record before us, we find that the proffer letter upon which Barge relies was not a binding plea agreement. On the other hand, the terms discussed at the plea hearing, requiring Barge to testify against *any* co-defendant in *any* other judicial proceeding, comprised the sum and substance of the parties' final plea agreement. Accordingly, since Barge refused to testify against Charaty White, one of her co-defendants in the homicide of Danielle Montgomery, we find that Barge violated the agreement. Therefore, pursuant to State v. White, the parties were returned to their pre-bargain status. Accordingly, the trial court did not abuse its discretion in granting the State's motion to set aside the plea agreement.

Resp. Ex. E, Memorandum at 2-4 (emphasis in original).

Pursuant to Williams, the court will consider federal law applicable to the issue which Petitioner raises in her § 2254 Petition. First, "there is no constitutional right to plea bargain; the prosecutor need not do so if he [or she] prefers to go to trial." Weatherford v. Bursey, 429 U.S. 545, 561 (1977). Under federal law a court interprets the meaning of the terms of a plea agreement "according to basic principles of contract law." United States v. Mosely, 505 F.3d 804, 808 (8th Cir. 2007) (citing United States v. Norris, 486 F.3d 1045, 1051 (8th Cir.2007) (en banc)). See also Ricketts v. Adamson, 483 U.S. 1, 16 (1987) ("[I]t seems clear that the law of commercial contract may in some cases prove useful as an analogy or point of departure in construing a plea agreement, or in framing the terms of the debate."). However, "[u]nlike some commercial contracts, plea agreements must be construed in light of the rights and obligations created by the Constitution." Id. "When a plea '"rests to any significant degree on a promise or agreement ... so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."' Mosely, 505 F.3d at 808 (quoting Santobello v. New York, 404 U.S. 257, 262 (1971)). The Eight Circuit has held that to "allow [a] defendant to refuse to honor his obligations under [a plea] agreement with impunity"

11

would "render a plea agreement meaningless." United States v. Britt, 917 F.2d 353, 357 (8th Cir. 1990). Further, a defendant's constitutional rights are not violated where pursuant to his failure to honor his obligations under a plea agreement the parties return to "their original positions prior to the agreement," including the reinstatement of the original charges against the defendant. Id. (citing Ricketts, 483 U.S. at 10).

In the matter under consideration, as reasoned by the Missouri appellate court, the terms of the plea agreement which Petitioner seeks to enforce were addressed at a hearing held on March 27, 2001. At this hearing, in Petitioner's presence, Petitioner's attorney as well as the prosecutor made it clear that the plea agreement, pursuant to which Petitioner would plead guilty to the reduced charges in the Substitute Information, was premised upon Petitioner's cooperation in *any* proceedings involving the murder of Danielle Montgomery including proceedings against *any* of Petitioner's co-defendants. At the March 2001 hearing Petitioner acknowledged the veracity of the prosecutor's description of the facts including the fact that Charaty White participated in the murder of Montgomery along with Petitioner and Franklin. Petitioner does not deny that she refused to testify in White's case. Because Petitioner did not honor her obligations under the plea agreement, it cannot be said that her constitutional rights were violated by the reinstatement the original charges against her. See Ricketts, 483 U.S. at 10; Santobello, 404 U.S. at 262; Mosely, 505 F.3d at 808; Britt, 917 F.2d at 357. As such, the court finds that the decision of the Missouri appellate court in regard to the issue raised in Petitioner's § 2254 Petition is not contrary to federal law and that it is a reasonable application of federal law. See Williams, 529 U.S. 362. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. As such, the issue raised by Petitioner in her § 2254 Petition is without merit and relief on its basis should be denied.

## V.
## CONCLUSION

For the reasons stated above, the court finds that the issue raised by Petitioner in her § 2254 Petition is without merit. As such, Petitioner's § 2254 petition for habeas relief should be denied in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED** and that it be **DISMISSED**; Doc. 1.

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
Dated this 28th day of October, 2008.     UNITED STATES MAGISTRATE JUDGE